NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE (A.S.F.), AN INDIVIDUAL,<br><br>              *Plaintiff*,<br><br>    v.<br><br>WYNDHAM HOTELS & RESORTS, INC. F/K/A WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL GROUP, LLC; SUPER 8 WORLDWIDE, INC.; and SHAILEY ENTERPRISES, L.C. D/B/A SUPER 8,<br><br>              *Defendants*. | Civil No.: 25-cv-1550 (KSH) (JBC)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.**    **Introduction**

This case is one of several filed in this district seeking redress under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, for alleged sex trafficking in hotels located in various cities. Plaintiff Jane Doe ("A.S.F."), who will be referred to by her initials in this opinion, alleges that she was sex trafficked in the Super 8 Motel located in Norfolk, Virginia.

Shailey Enterprises, L.C. d/b/a Super 8 ("Shailey"), as a franchisee managing the Super 8, raises the issue of venue in a case brought against it and Wyndham Hotels & Resorts, Inc. ("Wyndham"),[1] the franchisor, arguing in its moving brief: "[V]enue is not proper under Section 1391(b) because a substantial part of the events giving rise to Plaintiff's claims did not take place within the District of New Jersey, but instead took place within the Eastern District of Virginia

---

[1] Additional defendants include Wyndham Hotel Group, LLC and Super 8 Worldwide, Inc. (together with Wyndham and Shailey, "defendants").

1

and because Shailey Enterprises is a Virginia corporation with a principal place of business in Virginia." (D.E. 17, Mtn. to Dismiss, at 8.) This Court disagrees for the reasons below and denies the motion.

## II. Background

The allegations in the complaint are taken as true for purposes of this motion. Between February 1, 2014 through February 28, 2015, A.S.F. was a victim of sex trafficking at a Super 8 located at 1010 W. Ocean View Ave. in Norfolk, Virginia. (D.E. 21, Am. Compl. ¶ 28.) Defendants operated the Super 8 through a franchising agreement with Wyndham; A.S.F. alleges that together they constituted a "joint venture" whereby Wyndham as franchisor had operational control over the Super 8 from its principal place of business in New Jersey and Shailey as franchisee provided "boots on the ground" operations at the hotel and reported back to Wyndham at its New Jersey corporate offices. (*Id.* ¶¶ 17-18, 22-25, 38, 104.)

Citing news coverage and online reviews, A.S.F. asserts that defendants were aware that sex trafficking occurs in the hotel industry generally, at Wyndham properties specifically, and that A.S.F.'s sex trafficking was "prevalent and obvious" at the Norfolk Super 8 in particular. (*See id.* ¶¶ 40-76.) She alleges that defendants knew or, through the exercise of reasonable diligence should have known, that she was being trafficked at the Super 8 because of the "apparent and obvious 'red flags' of sex trafficking" that were present. (*Id.* ¶¶ 39, 77-82.) Among them:

- she was visibly bruised on a near-daily basis due to routine physical violence inflicted by her trafficker;
- she and her trafficker stayed in the same room with three other women, all of whom were being trafficked;
- the rooms were consistently booked under [A.S.F.]'s name using her identification, and no identification was ever provided for her trafficker or the other women, despite hotel staff knowing that [A.S.F.]'s trafficker was staying in the room (at the time, [A.S.F.]'s trafficker had active

- kidnapping charges pending against him – information that was publicly available);
- rooms were paid for in cash and extended one day at a time by [A.S.F.], requiring her to appear at the front desk daily while exhibiting visible signs of abuse; and
- housekeeping services were repeatedly refused for the duration of each stay, which typically lasted three to four weeks. When housekeeping staff approached the room, [A.S.F.] would meet them at the door, borrow their broom to clean inside the room herself, and dispose of trash directly into their carts to prevent entry.

(*Id.* ¶¶ 33, 79.)

Other "red flags" included that:

- Drug use was constant in the room, including marijuana, cocaine, crack cocaine, and heroin, with the smell of marijuana frequently detectable;
- There was constant heavy foot traffic in and out of her room involving men who were not hotel guests. [A.S.F.] was forced to engage in commercial sex acts with approximately five to ten men per day, while the total number of johns visiting the room across all victims ranged from fifteen to twenty per day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and
- [A.S.F.]'s trafficker was acquainted with a maintenance worker at the Subject Super 8, to whom he sold drugs in exchange for silence and protection. This Subject Super 8 employee also provided advance warning whenever law enforcement was approaching or present at the property.

(*Id.* ¶¶ 33-34.)

A.S.F. alleges that despite actual or constructive knowledge of these circumstances, defendants "act[ed] jointly to rent rooms to traffickers and to operate the hotel in a way that attracted business from traffickers and facilitated their trafficking activity." (*Id.* ¶ 104, *see id.* ¶¶ 83-97.) She asserts that Wyndham allowed "inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking"; inadequately "enforced sex trafficking notice and training for hotel staff"; chose not to report suspected sex trafficking "according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures"; and allowed A.S.F.'s trafficker

3

to openly show signs of trafficking without recourse, which implicitly encouraged the trafficking. (*Id.* ¶ 91.) She asserts that Shailey failed "to report suspected trafficking activity according to reasonable practices, industry standards, and/or applicable policies"; failed to ask about A.S.F.'s welfare despite obvious signs of distress; continued to rent rooms to A.S.F.'s trafficker despite observed signs of trafficking; failed "to take reasonable steps to hire, train and supervise staff to properly detect and respond to sex trafficking"; and enabled A.S.F.'s trafficking by providing access to rooms and housekeeping services. (*Id.* ¶ 87.)

A.S.F. sued defendants on February 28, 2025. (D.E. 1.) Count One alleges that defendants are liable as beneficiaries under § 1595(a) of the TVPRA since they knowingly benefited from and participated in ventures that violated the Act. (D.E. 21, Am. Compl. ¶¶ 119-123.) Count Two alleges that Wyndham is vicariously liable for the acts of Shailey, its agent. (*Id.* ¶¶ 124-129.)

### III.     Legal Standard

Fed. R. Civ. P. 12(b)(3) permits a court to dismiss a matter that is filed in the wrong venue. The defendant bears the burden of establishing improper venue. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012) (citation omitted). When deciding a motion to dismiss for improper venue, the court accepts "[a]ll well-pleaded allegations in the complaint . . . as true." *Id.* at 158 n.1.

Whether venue is proper is governed by 28 U.S.C. § 1391, which provides that

A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the District is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to a court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Shailey's position is that a substantial part of the events or omissions giving rise to the claim did not occur in New Jersey. (D.E. 17, Mtn. to Dismiss, at 8-9.) As such, Shailey argues that venue is improper pursuant to § 1391(b)(2). "The test for determining venue" under § 1391(b)(2) "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citation omitted). "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute" and the facts alleged to give rise to plaintiff's cause of action. *Id.* at 295.

## IV. Discussion

### A. Statute of Limitations

As an initial matter, Shailey argues that A.S.F.'s claims as a victim of sex trafficking are time barred. The TVPRA has a statute of limitations of 10 years. 18 U.S.C. § 1595(c)(1) ("No action may be maintained under subsection (a) unless it is commenced not later than . . . 10 years after the cause of action arose."). Statute of limitation defenses may be raised "by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). That is, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Here, it is not obvious based on the face of the amended complaint that the action is time barred and Shailey's arguments to the contrary are rendered moot by A.S.F.'s amended complaint,[2] which alleges that A.S.F. "was subject to continuous trafficking at the Subject Super 8 through at least February 28, 2015." (D.E. 21, Am. Compl. ¶ 134.) She filed this lawsuit on February 28, 2025, which is timely under the continuing tort doctrine.[3] *See Doe (C.J.) v. Cotugno*, 2024 WL 4500994, at *2 (D.N.J. May 16, 2024) (Arleo, J.) (applying the continuing tort doctrine to find the plaintiff's TVPRA action timely since the "last act evidencing the continuing practice [fell] within the limitations period" (quoting *Zankel*, 245 F. App'x at 198)). As such, the Court finds that A.S.F.'s claims are timely.

### B. Venue

Shailey's motion rests on its argument that a substantial part of the events giving rise to A.S.F.'s claims took place in Virginia, requiring a transfer of venue. If A.S.F. were suing the trafficker, then the argument for transfer to the Eastern District of Virginia might be stronger. But she is suing the entities that she alleges enabled and profited from what the trafficker did, which shifts the focus to the relationship between Shailey and the corporation calling the shots about the operation of the locus of the trafficking.

A.S.F. alleges that Shailey was controlled by Wyndham, answered to it, and that any disregard of the apparent "red flags" of her trafficking by either defendant is therefore

---

[2] Shailey elected to apply its motion to dismiss arguments to the amended complaint rather than respond to the amended complaint. (*See* D.E. 23, 26.)

[3] Under the continuing tort doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d Cir. 2007) (internal quotation marks and citation omitted).

attributable to both. (*See* D.E. 21, Am. Compl. ¶ 104 (alleging that Shailey provided "'boots on the ground' at the hotel, and the Wyndham Defendants played a primary role in renting rooms at the Subject Super 8 and retained control over and was directly involved in aspects of hotel operations related to sex trafficking").) The relationship between Shailey, enforcing Wyndham's polices, and Wyndham, setting the policies, cannot be separated from the harm alleged. Their franchising agreement directed how Shailey would be paid, what Wyndham's cut would be, how payments would be processed back in New Jersey, and additionally outlined when and how Shailey must report suspected sex trafficking to Wyndham. (*Id.* ¶ 24.) And Wyndham's corporate decision-making—which includes decisions related to its policies, reporting requirements, and its supervision and training of Shailey—and its profit-sharing from its corporate headquarters in New Jersey mean that a "substantial part of the events or omissions giving rise to" A.S.F.'s claims occurred here.

Other courts have made venue decisions based on what was or was not going on in corporate headquarters. In *In re Hotel TVPRA Litigation*, the court considered 35 cases alleging similar TVPRA violations against various hotel defendants. 2023 WL 3075851 (S.D. Ohio Apr. 25, 2023). In relevant part, the court found that a substantial part of the events giving rise to plaintiffs' § 1595(a) claims occurred both in the district where the plaintiffs were trafficked *and* where the defendants were headquartered. *Id.* at *16-17. Because plaintiffs were alleging that defendants' failure to act or to properly respond to their trafficking resulted from their corporate decision-making and company-wide policies of ignoring red flags, the court found that "it is reasonable to conclude that the series of decisions that could result in Defendants' liability under 18 U.S.C. § 1595(a) were made where the executives were located." *Id.* at *10, *17. *See also J.N.K. v. Red Roof Inns*, 2025 WL 772150, at *4, *7 (S.D. Ohio Mar. 11, 2025) (finding that the

7

plaintiff's claims against the Michigan-based franchisee defendant arose out of its contacts with Ohio through the franchisee's relationship with the Ohio-based franchisor defendants).  And particularly persuasive on keeping the focus trained on the named defendants is the court's holding in *L.G. v. Red Roof Inns, Inc.*:

> What occurred at the Defendants' headquarters in New Albany, Ohio, goes to the heart of Plaintiff's Complaint, pointing to Defendants' corporate knowledge and lack of proper training to hamper and detect trafficking on their properties.  Plaintiff does not allege that the actual hotel employees were responsible for her trafficking, rather, the employees did not address the clear signs of Plaintiff's trafficking due to improper training and insufficient policies on the corporate level.  While Plaintiff's alleged trafficking arose in Maryland and Virginia, the claim at issue arises in Ohio, based on Plaintiff's assertion that Defendants have corporate knowledge of the training and policies related to trafficking.
>
> 2022 WL 4091837, at *4 (S.D. Ohio Sept. 7, 2022).

## V.  Conclusion

For the foregoing reasons, Shailey's motion to dismiss is denied.  An appropriate order accompanies this opinion.

Date: December 24, 2025

*/s/ Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.