NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JANE DOE (A.S.F.), AN INDIVIDUAL,

          *Plaintiff*,

      v.

WYNDHAM HOTELS & RESORTS, INC.
F/K/A WYNDHAM WORLDWIDE
CORPORATION, WYNDHAM HOTEL
GROUP, LLC; SUPER 8 WORLDWIDE, INC.;
and SHAILEY ENTERPRISES, L.C. D/B/A
SUPER 8,

          *Defendants*.

Civil No.: 25-cv-1550 (KSH) (JBC)

OPINION

**Katharine S. Hayden, U.S.D.J.**

I.     **Introduction**

This case is one of several filed in this district seeking redress under the Trafficking

Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, for alleged sex

trafficking in hotels located in various cities. Plaintiff, who will be referred to by her initials

A.S.F. in this opinion, alleges that she was sex trafficked in the Super 8 Motel located in

Norfolk, Virginia. On December 24, 2025, the Court denied Shailey Enterprises, L.C. d/b/a

Super 8's ("Shailey") motion to dismiss for lack of jurisdiction. (D.E. 58.) Wyndham Hotels &

Resorts, Inc., Wyndham Hotel Group, LLC, and Super 8 Worldwide, Inc. (together, "the

Wyndham defendants") have moved to dismiss the amended complaint under Fed. R. Civ. P.

12(b)(6). For the reasons set forth below, that motion is denied.

II.    **Background**

A.S.F. alleges that between February 1, 2014 through February 28, 2015, she was a

victim of sex trafficking at a Super 8 located at 1010 W. Ocean View Ave. in Norfolk, Virginia.

1

(D.E. 21, Am. Compl. ¶ 28.)  She alleges that she was "trafficked an incalculable number of times" at the Super 8, and her "average duration of stay . . . was approximately three to four weeks during alternating months."  (*Id.* ¶ 31.)  The Super 8 was operated and controlled through a franchising agreement between the Wyndham defendants, the franchisor, and Shailey (together with the Wyndham defendants, "defendants"), the franchisee.  (*Id.* ¶¶ 17-18, 22-25.)  A.S.F. alleges that the Wyndham defendants had operational control over the Super 8 and that Shailey provided "boots on the ground" operations at the hotel and reported back to the Wyndham defendants at their New Jersey corporate offices.  (*Id.* ¶¶ 22-25, 38, 104.)

According to the complaint, the Wyndham defendants "knew about [the] widespread and ongoing trafficking at the Subject Super 8, including the trafficking of [A.S.F.], through the direct observations of hotel staff," who were required "to report suspected criminal activity to the Wyndham Defendants," including sex trafficking.  (*Id.* ¶¶ 74-76, 82.)  A.S.F. alleges that there were obvious signs she was being sex trafficked at the Super 8.  (*Id.* ¶¶ 39, 77-82.)  Among them:

- she was visibly bruised on a near-daily basis due to routine physical violence inflicted by her trafficker;
- she and her trafficker stayed in the same room with three other women, all of whom were being trafficked;
- the rooms were consistently booked under [A.S.F.]'s name using her identification, and no identification was ever provided for her trafficker or the other women, despite hotel staff knowing that [A.S.F.]'s trafficker was staying in the room (at the time, [A.S.F.]'s trafficker had active kidnapping charges pending against him – information that was publicly available);
- rooms were paid for in cash and extended one day at a time by [A.S.F.], requiring her to appear at the front desk daily while exhibiting visible signs of abuse; and
- housekeeping services were repeatedly refused for the duration of each stay, which typically lasted three to four weeks.  When housekeeping staff approached the room, [A.S.F.] would meet them at the door, borrow their broom to clean inside the room herself, and dispose of trash directly into their carts to prevent entry.

(*Id.* ¶¶ 33, 79.)

Other "red flags" included that:

- Drug use was constant in the room, including marijuana, cocaine, crack cocaine, and heroin, with the smell of marijuana frequently detectable;
- There was constant heavy foot traffic in and out of her room involving men who were not hotel guests. [A.S.F.] was forced to engage in commercial sex acts with approximately five to ten men per day, while the total number of johns visiting the room across all victims ranged from fifteen to twenty per day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and
- [A.S.F.]'s trafficker was acquainted with a maintenance worker at the Subject Super 8, to whom he sold drugs in exchange for silence and protection. This Subject Super 8 employee also provided advance warning whenever law enforcement was approaching or present at the property.

(*Id.* ¶¶ 33-34.)

A.S.F. submits that the Wyndham defendants knew or should have known about the widespread trafficking occurring at the Super 8 because they regularly monitored online reviews, collected and monitored customer surveys and complaints, and regularly inspected the hotel property. (*Id.* ¶¶ 75, 117, *see id.* ¶¶ 60, 62, 70 (citing online reviews of Wyndham properties, including reviews of the Super 8, to show that sex trafficking at these hotels was "prevalent and obvious").) She alleges that the Wyndham defendants directly operated the Super 8 by setting Shailey's policies, reporting and training requirements; "controll[ing] all details of the guest reservation, check-in, and payment processes"; and that they controlled the Super 8's central reservation system, "restrict[ing] the ability of [Shailey] and staff to refuse or cancel a reservation" and by controlling "a brand-wide 'do not rent' system." (*Id.* ¶¶ 93, 116-117.)

A.S.F. sued defendants on February 28, 2025 (D.E. 1) and filed an amended complaint on June 5, 2025 (D.E. 21). Count One alleges that defendants are liable as beneficiaries under § 1595(a) of the TVPRA since they knowingly benefited from and participated in ventures that

3

violated the Act. (D.E. 21, Am. Compl. ¶¶ 119-123.) Count Two alleges that the Wyndham defendants are vicariously liable for the acts of Shailey, their agent. (*Id.* ¶¶ 124-129.)

The Wyndham defendants have moved to dismiss the amended complaint, asserting that it is time-barred, that it fails to state a claim for relief, and in the alternative that the Court should order a more definite statement of the dates A.S.F. claims she was trafficked. (D.E. 38.) A.S.F. argues her claims are adequately supported by the amended complaint and that the complaint is not "so vague or ambiguous" that the Wyndham defendants cannot prepare a response. (D.E. 44.)

This Court earlier denied Shailey's separate motion to dismiss for improper venue in which Shailey unsuccessfully argued that the complaint was untimely. (D.E. 58, 59.) Having held the complaint timely under the continuing tort doctrine (D.E. 58, Opinion, at 5-6), the Court will focus on the Wyndham defendants' remaining arguments.

## III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In deciding a Rule 12(b)(6) motion, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty.*

4

*of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation and quotation marks omitted).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

**IV.    Discussion**

**A.  TVPRA Beneficiary Liability**

The TVPRA is a criminal statute that creates a civil cause of action for victims of sex trafficking.  18 U.S.C. § 1591(a).  The civil remedy portion of the Act provides that beneficiaries of sex trafficking may be directly liable to victims:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

To determine whether "a violation of this chapter" exists for purposes of beneficiary liability, courts look to § 1591(a) of the Act, which provides:

> (a) Whoever knowingly--
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means

will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

To state a claim for beneficiary liability under § 1595(a), a plaintiff must allege that s/he was a victim of a criminal offense under § 1591(a) and that defendants "(1) 'knowingly benefitted financially or by receiving anything of value,' (2) from participation in a venture, (3) which defendants 'knew or should have known has engaged in' sex trafficking under section 1591(a)." *E.B. v. Howard Johnson by Wyndham Newark Airport*, 2023 WL 12053001, at \*6 (D.N.J. Dec. 29, 2023) (Neals, J.) (citation modified) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

The Wyndham defendants do not challenge whether the complaint adequately pleads that A.S.F. was a victim of sex trafficking and the Wyndham defendants profited. (*See* D.E. 38, Mov. Br., at 10.)  Rather, they argue that the amended complaint does not "plausibly allege" that they participated in a venture that violated the TVPRA or that they had actual or constructive knowledge of any such venture—elements two and three. (*Id.* at 10-23.)

*1.  Participation in a Venture*

A venture for purposes of § 1595 "is an undertaking or enterprise involving risk and potential profit," and may be shown through a defendant's participation in a sex trafficking venture itself or through its participation in a general commercial venture that facilitated sex trafficking. *Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 342092, at \*3 (D.N.J. Jan. 30, 2025) (Wigenton, J.) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724-25 (11th Cir. 2021)).

A franchisor "participates" in a sex trafficking venture where the allegations show "a continuous business relationship between the trafficker and the [hotel defendant] such that it would appear that the trafficker and the hotel[] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* (quoting *Doe (C.J.) v. Cotugno*, 2024 WL 4500994, at \*4 (D.N.J. May 16, 2024) (Arleo, J.)); *see M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known [were] engaged in sex trafficking."). And "[i]n order to sufficiently 'connect the dots,'" between a franchisor and a trafficker for purposes of this element, "a plaintiff must allege facts that link the franchisors to the traffickers through the franchisors' oversight of the franchisees and hotel operations." *Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 1119736, at \*4 (C.D. Cal. Mar. 5, 2025).

Further, courts have found that "commercial ventures like running or expanding a business, even if their primary focus is not on sex trafficking, are ventures under the TVPRA." *Doe (M.J.J.)*, 2025 WL 342092, at \*4 (citation modified) (citing *G.G. v. Salesforce.com*, 76 F.4th 544, 554 & n.8 (7th Cir. 2023)); *see Timko v. NSPA Lounge LLC*, 2025 WL 2162470, at \*9-10 (W.D. Pa. July 30, 2025) (finding that "Wyndham was in a franchise relationship with the Days Inn—i.e., a commercial relationship with risk and profit" which qualifies as a "venture" for TVPRA purposes). "[S]o long as a TVPRA violation is within the scope of the venture, a defendant can 'participate' commercially and still be held liable." *Cotugno*, 2024 WL 4500994, at \*3. And franchisors have been found to "participate" in these types of ventures when they have ongoing control and oversight over the franchisee and the hotel's operations. *Doe*, 2025 WL 1119736, at \*4-5 (allegations that Wyndham controlled the hotel's central reservation

system and the franchisee's "policies and procedures regarding check-in, payment, and identity verification procedures" were sufficient to show that Wyndham participated in a venture with its franchisee); *see Timko*, 2025 WL 2162470, at *11 (collecting cases).

A.S.F. alleges that the Wyndham defendants participated in two ventures, one with her traffickers and one with Shailey. As to the first venture, she states that the Wyndham defendants "rent[ed] rooms to traffickers" despite actual or constructive knowledge of the trafficking and "operate[d] the hotel in a way that attracted business from traffickers and facilitated their trafficking activity." (D.E. 21, Am. Compl. ¶¶ 100-104, *see also id.* ¶¶ 53, 83-97.) And throughout her complaint, A.S.F. points to the control that the Wyndham defendants exercised and retained over Shailey and the Super 8's operations. (*Id.* ¶¶ 38, 91-93, 104, 116-117.)

The Wyndham defendants argue they did not directly rent rooms to A.S.F.'s traffickers or observe the traffickers' actions. (D.E. 38, Mov. Br., at 11-13.) But such facts are not required. Instead, to support the existence of a venture between a franchisor and a trafficker, a plaintiff must allege that the franchisor "facilitated the trafficking through repeated renting of rooms and substantial oversight over the franchisees' hotel operations." *Doe*, 2025 WL 1119736, at *4-5 (quoting *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 735 (E.D. Tex. 2024)).

A.S.F. has made this showing. She alleges that the Wyndham defendants retained day-to-day control over the Super 8 by "controll[ing] all details of the guest reservation, check-in, and payment processes" and maintained "operational directives" that dictated what information had to be collected from guests at check in. (D.E. 21, Am. Compl. ¶ 93.) She also alleges that the Wyndham defendants set Shailey's policies, reporting and training requirements, and that they "exercised and reserved the right to exercise systemic and pervasive control over [Shailey's] day-to-day operation" of the Super 8. (*Id.* ¶¶ 116-117.) Further, she alleges that the Wyndham

8

defendants "attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal"; "delayed taking obvious and apparent steps to stop facilitating sex trafficking"; and "allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability." (*Id.* ¶ 96.)

These allegations sufficiently establish participation in a venture at this stage. *See Doe (M.J.J.)*, 2025 WL 342092, at *3 (finding Wyndham participated in a venture with plaintiff's trafficker where it had control over the franchisee's hiring, training, and enforcement).[1] To the extent the Wyndham defendants argue that they did not have operational control over Shailey's business "beyond the customary parameters of the franchise relationship" (D.E. 38, Mov. Br., at 25), this line of argument is better explored later in the litigation.

As to the venture with Shailey, A.S.F. alleges that the Wyndham defendants profited from their business relationship with Shailey, controlled Shailey and the operations of the Super 8, and knew or should have known that they were facilitating trafficking. This is enough to allege participation in a commercial venture. *See Doe (M.J.J.)*, 2025 WL 342092, at *3-4 (finding allegations that the franchisor profited from the franchise business relationship and had control over hiring, training, and policy enforcement of the hotel sufficient to demonstrate the franchisor's participation in a venture with the franchisee); *D.K. v. Red Roof Inns, Inc.*, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024) (finding allegations that the franchisor "profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of 'participation in a venture'").

---

[1] Other cases in this district with similar parties, allegations, and dispositions include: *Doe (A.L.H.) v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 3712278 (D.N.J. Dec. 22, 2025) (Wigenton, J.); *Doe (J.T.A.) v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 2731105 (D.N.J. Sept. 25, 2025) (Wigenton, J.); and *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 1166519 (D.N.J. Apr. 21, 2025) (Wigenton, J.).

*2. Actual or Constructive Knowledge*

The Wyndham defendants argue that allowing A.S.F.'s complaint to proceed would essentially impose strict liability on hotel franchisors.  (D.E. 38, Mov. Br., at 16-17.)  But as the court articulated in *Timko*, "liability under Section 1595 is circumscribed by the scienter requirement."  2025 WL 2162470, at *11 n.16.  "Participation in a business venture isn't enough to subject a franchisor to liability; it still must know or should have known that the venture was engaging in acts violating the TVPRA."  *Id.*

The parties disagree as to whether § 1595(a) requires a defendant to have general knowledge that the venture was engaged in sex trafficking, or specific knowledge that the venture was engaged in sex trafficking as to the plaintiff.  (*See* D.E. 38, Mov. Br., at 17 (arguing for plaintiff-specific knowledge) (citing *Red Roof Inns*, 21 F.4th at 725); D.E. 44, Opp., at 15-16 (arguing for general venture-level knowledge) (citing *G.G.*, 76 F.4th at 556-57).)  While the Seventh Circuit in *G.G.* articulated that general venture-level knowledge is the appropriate *mens rea* in cases involving multiple plaintiffs, it also clarified that in cases that involve the trafficking of only one plaintiff, "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture' . . . [b]ecause the ventures and the victims [are] one and the same."  *G.G.*, 76 F.4th at 557 (internal citation omitted).  Since this case involves only A.S.F. as a trafficking victim, she must plead that the Wyndham defendants had actual or constructive knowledge that the ventures engaged in sex trafficking as to her.

These facts and the moving defendants' arguments hinge on their not having constructive knowledge.  "Constructive knowledge in the TVPRA context can be defined as 'that knowledge which one using reasonable care or diligence should have.'"  *Cotugno*, 2024 WL 4500994, at *4 (citation modified) (quoting *Red Roof Inns*, 21 F.4th at 725).  In *Ricchio v. McLean*, 853 F.3d

10

553 (1st Cir. 2017), the First Circuit found the following allegations sufficient to establish defendants' constructive knowledge of the sex trafficking venture:  the motel owner high-fived the trafficker about "getting this thing going again," there was a past business relationship between the two, the owner had seen and disregarded plaintiff's physical deterioration, and plaintiff's trafficker kicked her and prevented her from escaping "in plain daylight view of the front office of the motel."  853 F.3d at 555.  On far fewer facts, in *Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018), the court found that a condo owner had no reason to know of plaintiff's trafficking when the allegations merely consisted of one police visit and one ambulance visit to the condo over the span of six years.  2018 WL 2012869, at *13-14.

Many cases, including this one, offer facts that fall in the middle.  "Some courts have found that simply alleging general knowledge of sex trafficking in the hotel industry, facts specific to the victim's trafficking, and an allegation of the franchisors' failure to implement policies to combat sex trafficking in their hotels was sufficient[.]"  *Timko*, 2025 WL 2162470, at *12 (quoting *Doe (K.E.C.)*, 750 F. Supp. 3d at 736-37).  Other courts require more, such as allegations "that the franchisor monitored the franchisee hotels or that the staff reported sex trafficking activity to the franchisor."  *Id.* (quoting *Doe (K.E.C.)*, 750 F. Supp. 3d at 737).  And "absent franchisor-specific allegations, some courts look for an agency relationship between the franchisor and franchisee" for evidence of the franchisor's constructive knowledge.  *Id.* (collecting cases).

Here, A.S.F. pleads that the Wyndham defendants have general knowledge of trafficking at its hotels; that they have specific knowledge of trafficking at the Super 8 through online reviews; that there were obvious signs of A.S.F.'s trafficking observed by hotel staff, who were required to report these signs to the Wyndham defendants; that the Wyndham defendants should

11

have known about these reviews and A.S.F.'s red flags based on their mandatory reporting requirements, inspections, and control over the Super 8's operations; and that the Wyndham defendants failed to adequately combat trafficking through their policies, trainings, and operations. (D.E. 44, Opp., at 16 (citing D.E. 21, Am. Compl. ¶¶ 33, 68-76, 82, 92); *see* D.E. 21, Am. Compl. ¶¶ 60, 62.) Specifically as to her, A.S.F. alleges she was required to go to the front desk daily to extend her room reservations and paid for the room in cash; her trafficker refused housekeeping services and displayed "Do Not Disturb" signs on the door; on average, five to ten men visited her room daily over her stays, which lasted three to four weeks; and drug use was constant in the room that could be smelled from the hallway. (D.E. 21, Am. Compl. ¶¶ 31, 33-34.)

The Court finds that the complaint sufficiently raises the reasonable inference that the Wyndham defendants knew or should have known that the ventures were engaged in the trafficking of A.S.F., *see Timko*, 2025 WL 2162470, at *12-13, and the motion to dismiss Count One is denied.

### B. Vicarious Liability

For a party to be vicariously liable for the actions of another, there must be an agency relationship between them. *Doe (M.J.J.)*, 2025 WL 342092, at *5. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Id.* (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994)).

A franchisor may be found liable for the actions of its franchisee when it "had authority to control aspects of the hotel operations connected to [the plaintiffs'] claim." *Doe*, 2025 WL 1119736, at *7 (quoting *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 940 (D.

12

Or. 2020)); *see Doe (M.J.J.)*, 2025 WL 342092, at *5 ("The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties.") (quoting *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023) (Quraishi, J.)). "Vicarious liability claims have withstood motions to dismiss based on allegations that franchisors controlled 'the mode and manner of the work [and] employee training,' imposed 'standardized and strict rules of operations, . . . controlled pricing and reservations' and 'regularly conducted inspections.'" *Doe (M.J.J.)*, 2025 WL 342092, at *5 (quoting *Doe (P.B.)*, 2023 WL 8890229, at *5); *Cotugno*, 2024 WL 4500994, at *5 (vicarious liability adequately pled where the franchisor "shared profits, standardized employee training and rules of operations, controlled pricing and reservations, regularly conducted inspections, provided operational support, and had the right to terminate any franchisee . . . that failed to comply with [the franchisor's] requirements").

For many of the same reasons that the Court found A.S.F.'s claims are sufficient to demonstrate beneficiary liability, her allegations sufficiently demonstrate vicarious liability at this stage. She alleges that the Wyndham defendants directly controlled the training of Shailey's staff and "oversaw employee discipline processes and termination decisions." (D.E. 21, Am. Compl. ¶ 117(a)-(j).) She alleges the Wyndham defendants "imposed detailed recordkeeping and reporting requirements on [Shailey] regarding virtually all aspects of hotel operations," including reporting requirements as to suspected sex trafficking. (*Id.* ¶ 117(u), *see id.* ¶¶ 74-76.) The Wyndham defendants "conducted frequent and unscheduled inspections" of the Super 8 and had the ability to impose corrective action or to make operational changes at their discretion. (*Id.* ¶ 117(r)-(s), (w).) They "retained day-to-day control over renting rooms at the" Super 8

13

"through a central reservation system that they controlled and operated." (*Id.* ¶ 93.) These allegations are sufficient to support vicarious liability.

The Wyndham defendants argue that A.S.F. has failed to plead facts that would impute to them Shailey's TVPRA violation(s). (D.E. 38, Mov. Br., at 26-27.) But her allegations as to Shailey are similar to those underlying the Wyndham defendants' beneficiary liability. She alleges that Shailey's hotel staff observed[2] obvious signs that she was being trafficked at the Super 8 and still "continu[ed] to rent rooms to be used for trafficking (including (A.S.F.)'s trafficking) after [they] knew or should have known that the rooms were being used for unlawful trafficking." (D.E. 21, Am. Compl. ¶¶ 74, 79-80, 101.) She also alleges that Shailey participated in a general commercial venture with the Wyndham defendants to maximize revenue and to operate the Super 8 in ways they knew or should have known facilitated widespread trafficking at the hotel. (*Id.* ¶¶ 109-113.) This is enough to plead that Shailey violated the TVPRA and its violations may be imputed to the Wyndham defendants. The Wyndham defendants' motion to dismiss Count Two is denied.

### C.  Joint and Several Liability

Next, the Wyndham defendants argue that there can be no joint and several liability since there has been no judgment entered against them. (D.E. 38, Mov. Br., at 27; *see* D.E. 21, Am. Compl. ¶ 137 ("Defendants are joint and severally liable for all past and future damages sustained by [A.S.F.].").) The Court agrees with A.S.F. that this argument is premature and, in any event, the TVPRA allows for joint and several liability. *See Cotugno*, 2024 WL 4500994, at *1 n.3.

---

[2]  Beyond merely observing these red flags, A.S.F. also alleges that a Shailey maintenance employee directly assisted her trafficker by providing "advance warning whenever law enforcement was approaching or present at the property." (D.E. 21, Am. Compl. ¶¶ 34, 80.)

**D.  Request for More Definite Statement**

In the alternative, the Wyndham defendants request that A.S.F. identify the specific dates on which her trafficking occurred to demonstrate that her complaint is not time-barred.  (D.E. 38, Mov. Br., at 28-30.)

Rule 12(e) permits a party to move for a more definite statement where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery"; rather, "[t]he basis for granting such a motion is unintelligibility, not lack of detail."  *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008) (Irenas, J.) (citations omitted).

The Court finds that A.S.F. has sufficiently set forth the approximate dates on which she was trafficked.  She alleges that "[b]etween February 1, 2014, through February 28, 2015, [she] was trafficked an incalculable number of times at the Subject Super 8.  [A.S.F.]'s average duration of stay at the Subject Super 8 was approximately three to four weeks during alternating months."  (D.E. 21, Am. Compl. ¶ 31.)  This one-year timeframe puts the Wyndham defendants on notice about when A.S.F.'s trafficking started and ended and "is not so vague, ambiguous or unintelligible" that the Wyndham defendants "cannot respond in good faith."  *MK Strategies*, 567 F. Supp. 2d at 737.

**V.    Conclusion**

For the foregoing reasons, the Wyndham defendants' motion to dismiss is denied.  An appropriate order accompanies this opinion.

/s/ Katharine S. Hayden

Date: March 30, 2026                                     Katharine S. Hayden, U.S.D.J.

15